## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN GOTSIS,

     *Plaintiff,*

*v.*                            CASE NO. 12-CV-10075

COMMISSIONER OF            DISTRICT JUDGE MARK A GOLDSMITH
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 16.)

Plaintiff John Gotsis was 56 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 31. 82, 86.) Plaintiff's employment history includes work as a restaurant manager for 34 years. (Tr. at 114.) Plaintiff filed the instant claims on February 6, 2009, alleging that he became unable to work on February 1, 2009. (Tr. at 82, 86.) The claims were denied at the initial administrative stages. (Tr. at 42-43.) In denying Plaintiff's claims, the Commissioner considered mycotic and other chronic infections of the lung and lymphoma as possible bases for disability. (*Id.*) On March 30, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Gary J. Lee, who considered the application for benefits *de novo*. (Tr. at 10-24, 31-41.) In a decision dated August 19, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) Plaintiff requested a review of this decision on October 22, 2010. (Tr. at 7-9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 9, 2011, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On January 9, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of*

*Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*,

74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including

the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C.

§§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken

adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1

(1984). While the two programs have different eligibility requirements, "DIB and SSI are available

only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of
> impairments that "significantly limits . . . physical or mental ability to do basic work
> activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date. (Tr. at 15.) At step two, the ALJ found that Plaintiff's non-Hodgkin cutaneous t-cell lymphoma mycosis fungoides and depression were "severe" within the meaning of the second

6

sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16-17.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a restaurant manager. (Tr. at 20.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 17-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 21.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for cutaneous non-Hodgkin t-cell lymphoma ("CTCL") at the University of Michigan Hospital since 2008. (Tr. at 151-83.) Plaintiff had "a rash localized to his trunk and extremities for approximately 30 years, diagnosed as parapsoriasis." (Tr. at 152.) The rash worsened and spread to other areas of his body. Finally, in March 2008, a biopsy of the rash was taken and Plaintiff was diagnosed with CTCL. (*Id.*) Plaintiff was treated by Thomas Anderson, M.D., who prescribed various topical treatments and UVB phototherapy (light) treatments. (Tr. at 152-53.)

On August 18, 2009, Dr. Anderson noted State IB CTCL, recommended re-initiation of narrowband phototherapy and topical medications, diagnosed sebopsoriasis, rosacea, and eczematous dermatitis, and prescribed topical and internal prescription medications. (Tr. at 186.) Although Dr. Anderson sympathized with the "difficulties" Plaintiff was "having paying for gas to come to phototherapy, we did discuss that abruptly stopping phototherapy can lead to a significant flare of his disease," so Plaintiff indicated that he would resume treatments. (Tr. at 192.)

On February 17, 2010, Dr. Anderson noted that Plaintiff's depression and mood appeared "significantly improved from my initial evaluation with him." (Tr. at 201.) On April 5, 2010, Dr.

Anderson completed a Medical Examination Report wherein he concluded that Plaintiff should "avoid injuries to skin," but was otherwise unlimited physically or mentally. (Tr. at 189-90.)

On April 13, 2010, Sibin Zacharias, M.D., internal medicine at the University of Michigan, completed a Medical Examination Report wherein he concluded that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10-20 pounds, stand or walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday, and operate hand and foot controls. (Tr. at 198.) Dr. Zacharias also indicated that Plaintiff was limited only in sustained concentration but was not limited in following simple instructions, comprehension, memory, reading/writing or social interaction. (Tr. at 199.) Dr. Zacharias also stated that Plaintiff was able to meet his own needs in the home. (*Id.*)

On June 10, 2010, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Nick Boneff, Ph.D., who diagnosed depression (secondary to general medical condition), alcohol abuse in reported partial remission, polysubstance abuse in reported remission, reading disorder NOS (because reading abilities are much lower than overall cognitive functioning), assessed a GAF score of 54, and gave a "fair" prognosis. (Tr. at 212.) Dr. Boneff also completed a Medical Source Statement of ability to do work-related activities (mental) wherein he concluded that Plaintiff had no limitations in his ability to understand, remember and carry out instructions, or in his ability to interact appropriately with supervision, co-workers, the public, or in his ability to respond to changes in the routine work setting. (Tr. at 214.)

Plaintiff was also examined at the request of DDS by Cynthia Shelby-Lane, M.D., who noted Plaintiff's CTCL diagnosis along with the fact that Plaintiff "continues to have chronic lesions on his groin area, scalp and rectal area" and "will need long-term care" for the disease. (Tr. at 221.) Dr. Shelby-Lane also noted Plaintiff's "history of a herniated disc in his spine and he also

8

had bilateral carpal tunnel release." (*Id.*) Dr. Shelby-Lane completed a Medical Source Statement of ability to do work-related activities (physical) and concluded that Plaintiff could sit, stand or walk for one hour at a time without interruption, sit for a total of six hours, stand for a total of three hours, and walk for a total of three hours in an eight-hour day, could frequently use his hands and feet, should never climb ladders or scaffolds but could occasionally perform other postural activities, and could occasionally handle environmental conditions but should never move mechanical parts. (Tr. at 227-30.) Dr. Shelby-Lane concluded that Plaintiff could perform all the listed activities, such as shop, use public transportation, climb a few steps, and prepare meals. (Tr. at 231.)

In his Function Report, Plaintiff indicated that on a typical day he will "wake up, have coffee, eat, run to stores, do laundry, keep up apt, eat, watch tv and go to sleep." (Tr. at 120.) Plaintiff indicated that he has no problems with personal care, he prepares homemade meals daily, does laundry, goes outside every day, walks, drives a car, shops in stores for one to two hours, and is able to handle his own finances. (Tr. at 121-23.) Plaintiff's hobbies include watching television and riding his bike and he visits with family members every day and does not need anyone to accompany him. (Tr. at 124.)

At the administrative hearing, Plaintiff testified that the "fatigue and rash on my chest, arms, groin and butt area" prevent him from working. (Tr. at 37.) Plaintiff stated that he goes for treatment three times a week and that he "end[s] up getting more tired as I keep going for longer periods of time for treatment." (Tr. at 37-38.) Plaintiff is undergoing UVB light treatment to keep his non-Hodgkin T-cell lymphoma in remission. (Tr. at 38.) Plaintiff stated that he also takes anti-depressants which could add to the fatigue. (Tr. at 39.) Plaintiff has been treated for depression since September 2009. (Tr. at 40.)

**F.    Analysis and Conclusions**

**1.    Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work with some nonexertional limitations. (Tr. at 17-19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.    Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 14.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's RFC findings were not supported by substantial evidence (Doc. 14 at 11-14, 16-17), that the ALJ improperly rejected the treating source

opinions (*id.* at 14-16), and that the ALJ denied Plaintiff due process when he closed the hearing prior to asking Plaintiff's counsel if he had any questions for any of the witnesses. (*Id.* at 18.)

### a.   RFC Analysis

I suggest that the ALJ's RFC analysis is supported by substantial evidence. Plaintiff's own testimony indicated that he was not fired for any failure to perform his work, but rather because of the diagnosis alone (Tr. at 37) or, as reported to Dr. Anderson, because he would be missing work to attend phototherapy treatments. (Tr. at 191.) More importantly, Dr. Anderson, Plaintiff's treating physician, concluded that Plaintiff should "avoid injuries to skin" but was otherwise unlimited physically or mentally. (Tr. at 189-90.)

In addition, Dr. Shelby-Lane, an examining physician, concluded that Plaintiff could sit, stand or walk for one hour at a time without interruption, sit for a total of six hours, stand for a total of three hours, and walk for a total of three hours in an eight-hour day, could frequently use his hands and feet, should never climb ladders or scaffolds, but could occasionally perform other postural activities, and perform all the listed activities, such as shop, use public transportation, climb a few steps, and prepare meals. (Tr. at 227-31.)

Even Dr. Zacharias's findings do not necessarily support a finding of disability because he concluded that Plaintiff could frequently lift less than ten pounds, could occasionally lift ten to twenty pounds, could stand or walk less than two hours in an eight-hour workday, could sit less than six hours in an eight-hour workday, and could operate hand and foot controls. (Tr. at 198.) However, the "less than" format of these answers does not indicate whether Plaintiff could, for example, sit for five hours.

As to mental limitations, Plaintiff's treating physician, Dr. Anderson, found Plaintiff was not limited at all. (Tr. at 189-90.) The only other opinion from the examining physician, Dr.

Boneff, concluded that Plaintiff was not at all limited in his ability to understand, remember and carry out instructions, or his ability to interact appropriately with supervision, co-workers, the public, or his ability to respond to changes in the routine work setting. (Tr. at 214.) In addition, Plaintiff was only treated with prescription medications for his mental impairments. Such modest treatment is inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

As to Plaintiff's argument that the ALJ should have considered the difficulty that Plaintiff would encounter in scheduling phototherapy treatments if employed full-time, Plaintiff did not provide evidence as to the frequency or duration of treatments needed, nor the extent of the time Plaintiff would miss work on scheduled treatment days. In addition, the record reveals that Plaintiff was not regularly participating in phototherapy sessions after he was unemployed, leading Dr. Anderson to sympathetically chide him. (Tr. at 192.) Finally, work in restaurants is generally performed at a variety of hours outside the ordinary business day hours when therapy would be provided. I therefore suggest that the record does not undermine the ALJ's finding that Plaintiff could perform his past work. *See Robinson v. Astrue*, No. 1:10-cv-689-SKB-SSB, 2011 WL 6217436, at * 6-7 (S.D. Ohio Dec. 14, 2011) (upholding ALJ's finding that the plaintiff would not experience excessive absenteeism where the plaintiff's therapy lasted one hour and the record did not establish that she would necessarily require missing a full day of work).[2]

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he has no problem with personal care, prepares homemade meals

---

[2]In Plaintiff's brief, he indicates that both treatment and travel time would be around two hours total and that therapy is two or three days per week. (Doc. 14 at 17.) This, of course, is not record evidence, but even if there were such evidence in the record, I suggest the result would be the same.

daily, does laundry, goes outside every day, walks, drives a car, shops in stores for one to two hours, is able to handle his own finances, watches television, rides his bike and visits with family members every day. (Tr. at 121-24.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### b.    Treating Sources

Plaintiff argues that the ALJ improperly rejected the treating source opinions of Dr. Zacharias, treating internal medicine specialist, and Dr. Anderson, treating dermatologist, in favor of the examining physicians, Drs. Boneff and Shelby-Lane. (Doc. 14 at 14-16.)

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Here, the ALJ properly considered and gave reasons for the weight given the medical source opinions. (Tr. at 18-20.) Plaintiff's treating physician, Dr. Anderson, opined that Plaintiff was not limited physically or mentally, other than that he should avoid injuries to his skin, and his opinion was given controlling weight by the ALJ. (Tr. at 20, 189-90.) As to Dr. Zacharias's findings, as discussed above, I suggest that they do not necessarily support a finding of disability (Tr. at 198) because the "less than" format of these answers does not indicate whether Plaintiff could, for example, sit for five hours. Even if Dr. Zacharias's findings conflict with Dr. Anderson, the ALJ did not err in choosing one treating source opinion over the other. The ALJ is free to decide what weight to give competing evidence at the same analytical level, "such as contradicting multiple treating physicians," because this "is an administrative finding for which the final authority rests with the Commissioner." *Bandy v. Astrue*, No. 2:10-cv-00119, 2011 WL 6141037, at *6 (M.D. Tenn. Dec. 9, 2011). I therefore suggest that the treating source standards were not violated and that this argument does not undermine the ALJ's findings.

### c.    Due Process

Plaintiff contends that the ALJ denied Plaintiff due process when he closed the hearing prior to asking Plaintiff's counsel if he had any questions for any of the witnesses. (Doc. 14 at 18.)

The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d

15

1048, 1051-52 (6th Cir. 1983)). In the instant case, Plaintiff was represented by counsel so there were no special circumstances giving rise to any special duty on the part of the ALJ. Therefore, the duty of providing a complete record remained on Plaintiff.[3]

The ALJ has the discretion to start and stop hearings. 20 C.F.R. § 404.944 (1994). Nonetheless, under the full and fair record standard, due process requires that a plaintiff be given the right to cross-examine individuals who testify. *Butler v. Comm'r of Soc. Sec.*, No. 96-1211, 1997 WL 259374, at *4 (6th Cir. May 15, 1997). However, the right is waived if the attorney remains silent and does not pursue the right to cross-examine. *Id.; Coffin v. Sullivan,* 895 F.2d 1206, 1212 (8th Cir. 1990). In the instant case, there is no indication that counsel attempted to stop the ALJ from closing the hearing or even asked to question any witness and was denied that opportunity. I therefore suggest that no due process violation occurred.

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

---

[3]I further suggest that even if the ALJ had a heightened duty, Plaintiff has not pointed to any alleged failure of that duty that could have harmed Plaintiff. "Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly develop the record, a court will remand only if the claimant can demonstrate that [he] was prejudiced . . . . To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination." *Czibor v. Astrue*, No. 12C 1678, 2012 WL 4361554, at *7 (N.D. Ill. Sept. 20, 2012) (citing *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2008)). Mere conjecture is insufficient. *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
Dated: January 10, 2013             United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 10, 2013             By     s/Patricia T. Morris
                                    Law Clerk to Magistrate Judge Binder

17